## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| POTELCO, INC., | No. 50824-9-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, A.C.J. — Potelco, Inc. appeals the Decision and Order issued by the Board of Industrial Insurance Appeals (Board), finding that Potelco, Inc. had violated several safety regulations. Potelco argues that (1) substantial evidence does not support the Board's findings of fact No. 3 and No. 6, and (2) the Board erred in adopting conclusions of law No. 2 and No. 4. We hold that Potelco's claims fail. Accordingly, we affirm the Board's order.[1]

FACTS

A.    THE INCIDENT

On February 26, 2014, four employees of Potelco were tasked with setting electric transmission poles under a live 115 kilovolt (kV) high voltage transmission line in Kitsap County. One of the employees, Stan Street, operated the boom equipment from a truck. The other three

---

[1] The superior court also affirmed the Board's order, so by our affirming the Board's order, we also affirm the superior court's order.

employees guided the poles: Brian Chase and Jerry Circulado guided the poles with uninsulated peaveys[2] while Zach Morrison guided the butt end of the poles by hand wearing Class 2 rubber gloves rated for 17 kVs.

While setting one of the poles, Morrison slipped and fell, causing the pole to swing and rotate. The pole became a conductor, causing an electrical arc, and resulted in Morrison receiving an electrical shock. Morrison was rendered temporarily unconscious and received burns to his body.

B.      INVESTIGATION, CITATION, AND CORRECTIVE NOTICE

A Washington State Department of Safety and Health compliance inspector, George Maxwell, investigated the incident. Maxwell visited the incident site and interviewed the Potelco employees involved. Larry Rupe, Potelco's Director of Safety, also investigated the incident.

After Maxwell completed his investigation, the Washington Department of Labor and Industries (Department) cited Potelco for six violations. The cited violations relevant to this appeal are:

Violation 1 Item 1a                                          Violation Type: Serious
WAC 296-45-325(4)

For this instance the employer did not ensure that the pole was being set in a manner to avoid making contact with a one hundred and fifteen thousand volt line phase to phase. Three employees were exposed to the hazard on the PSE 115kv line approximately 4 spans east of the Puget Sound Energy owned[.] … Contact with a pole brushing against a high voltage line can cause death, serious disfiguring burns, loss of limbs, possible mental retardation.

        . . . .

---

[2] A peavey is a tool with a jointed hook and point on one end. The hook is stuck into a log or pole and provides leverage.

Violation 1 Item 1c                                    Violation Type:  Serious
WAC 296-45-385(1)(c)

The employer did not ensure that protective equipment rated for the 115 kv phase to phase was used when the pole with the attached 13 foot cross arm was raised into the minimum approach distance of 4'3".  Three employees were exposed to the hazard on the PSE 115kv line approximately 4 spans east of the Puget Sound Energy owned … substation[.] … Un-insulated physical contact with a wood pole brushing against a high voltage line can cause death, serious disfiguring burns, loss of limbs, possible mental retardation.

Administrative Record (AR) at 85-86.

Potelco appealed the citation.  The Department held an informal conference and issued a corrective notice of redetermination.  The Department affirmed the violations contained in the original citation.

C.      APPEAL TO IAJ AND EVIDENTIARY HEARING

Potelco appealed to the Board.  An industrial appeals judge (IAJ) held an evidentiary hearing.

Maxwell testified at the hearing to his understanding of what happened based on his investigation and interviews.  He stated that Potelco's employees were in the process of setting the pole during the incident.  The cross-arm was on the pole, and the pole was hanging off the winch line of the truck.  Chase and Circulado were controlling the pole with peaveys.  Morrison was pushing the pole into the pole claws of the truck, but slipped and caused the cross-arm to twist. The employees heard the cross-arm hit the 115 kV line, heard an arc, saw a flash at the ground, and saw Morrison get shocked.  Maxwell believed that the cross-arm had swung and touched the

3

115 kV line or broke the minimum approach distance[3] and created an electrical arc. The employees did not have protective equipment or cover rated for 115 kV. Morrison was wearing Class 2 gloves, which were not rated to address the live 115 kV line, and the peaveys were not insulated.

Rupe testified that he inspected the scene and the pole. He did not see any burn marks on the pole or the arm. During his two years as Director of Safety, Rupe had inspected other sites where a pole made contact with a live line, and in those instances, there were burn marks.

Morrison testified that when he was pushing the pole into the claws of the truck, the pole missed and he lost control. He slipped and was shocked. He was wearing Class 2 gloves rated for 17 kV. Morrison heard arcing, but he did not see the pole make contact with the 115 kV line or enter the minimum approach distance. He told Maxwell that he assumed the pole made contact with the 115 kV line based on the circumstances.

Street testified that the plan was to get the pole and arm through the distribution lines and then drop the pole into the hole. When Morrison lost his footing, the pole tipped and swung, and the cross-arm came around. Street saw Morrison get shocked, saw an arc at the bottom of the pole, and heard the arcing. He vaguely saw the top of the pole; he did not see the pole make contact with the 115 kV line but could not say it did not. Street may have told Maxwell that the pole made contact with the 115 kV line because he assumed it did as it made sense.

Chase testified that he and Circulado were moving the pole forward with peaveys while Morrison had his hands on the pole with gloves. He then heard Morrison yell, heard an arc, and

---

[3] The minimum approach distance is designed to keep people from getting electrocuted. When a conductive object enters the minimum approach distance, it could contact the conductor or create an arc. The minimum approach distance here was 4 feet 3 inches.

saw Morrison fall to the ground. Chase was looking at the peavey when Morrison was shocked. When they were initially moving the pole, the cross-arm was parallel to the 115 kV line. There was no cover on the 115 kV line. When Morrison fell, the pole rotated. From the noise Chase heard, he assumed that the pole made contact with the 115 kV line, but he did not see the pole make contact with the 115 kV line or enter the minimum approach distance.

Circulado testified that he was looking up and down when the shock occurred. The pole was tilted when the shock occurred. He did not see the pole make contact with the 115 kV line and did not think that the pole entered the minimum approach distance. Circulado believed that the minimum approach distance was 2 feet 2 inches but did not think that the pole came within 4 feet 3 inches of the line. Circulado did see the pole arcing through the 115 kV line and an arc go from the cross-arm through the butt plate.

Wayne Hagan, an electrical engineer, testified that when a conductive object enters an electrical field, it will acquire a charge if it does not have a path to be discharged to. The charge will stay on the object until it has a place to go, which is normally the ground.

After the hearing, the IAJ issued a Proposed Decision and Order. The Proposed Decision and Order affirmed the violations at issue in this appeal.

D.      APPEAL TO BOARD AND SUPERIOR COURT

Potelco and the Department both petitioned for review of the IAJ's Proposed Decision and Order to the Board. The Board reviewed the record and found that

> 2. On February 26, 2014, four employees of Potelco, Inc., were tasked with setting electric transmission poles under a 115 kV high voltage transmission line . . . . This crew consisted of Stan Street, foreman; Brian Chase, lineman; Jerry Circulado, lineman; and Zach Morrison, groundman. Mr. Street, the crew's

foreman operated the boom equipment from the truck while Mr. Chase and Mr. Circulado guided the transmission pole with uninsulated peavey hooks and Mr. Morrison guided the butt end of the pole by hand, wearing only Class 2 gloves. All four members of the crew actively worked to set the transmission pole, leaving no one person to actively supervise the work. While in the process of setting the second pole of the day, Mr. Morrison slipped and fell on the uneven terrain causing the transmission pole that the men were holding to swing and rotate. The transmission pole intruded into the minimum approach distance and became a conductor causing an electrical arc. As a consequence, Mr. Morrison received an electrical shock rendering him temporarily unconscious and causing burns to his body.

3. Under Citation Item 1-1(a), on February 26, 2014, employees of Potelco, Inc., setting a transmission pole allowed the pole to encroach within the minimum approach distance of an overhead energized 115 kV transmission line. As a result, the employees were exposed to the hazard of electrocution.

4. A substantial probability existed that if the Potelco employees exposed to the hazard described in Finding of Fact No. 3 were injured, the injury would result in serious physical harm, including death or permanent disability.

. . . .

6. Under Item 1-1(c), on February 26, 2014, employees of Potelco setting a transmission pole near an exposed energized overhead conductor were not wearing sufficient electrical protective equipment or using insulated devices when handling the pole. As a result, the employees were exposed to the hazard of electrocution.

7. A substantial probability existed that if the Potelco employees exposed to the hazard described in Finding of Fact No. 6 were injured, the injury would result in serious physical harm, including death or permanent disability.

. . . .

9. The severity of the hazard in Items 1-1(a) and 1-1(c) was a 6 on a scale of 1 to 6.

10. The probability of an injury occurring due to the hazard in Items 1-1(a) and 1-1(c) was a 5 on a scale of 1 to 6.

AR at 7-8.

No. 50824-9-II

The Board concluded that

      2. Item 1-1(a) of Corrective Notice of Redetermination No. 316977933 issued by the Department of Labor and Industries on November 10, 2014, is a serious violation of WAC 296-45-325(4), within the meaning of RCW 49.17.180(6).

    . . . .

      4. Item 1-1(c) of Corrective Notice of Redetermination No. 316977933 issued by the Department of Labor and Industries on November 10, 2014, is a serious violation of WAC 296-45-385(1)(c), within the meaning of RCW 49.17.180(6).

AR at 9-10.

Potelco appealed the Board's order to the superior court. The superior court affirmed the Board's decision. Potelco appeals.

ANALYSIS

A.    FINDINGS OF FACT NO. 3 AND NO. 6

Potelco argues that substantial evidence does not support the Board's findings of fact No. 3 and No. 6. We disagree.

In a Washington Industrial Safety and Health Act (WISHA) appeal, we review the Board's decision based on the record before the Board. *Mowat Constr. Co. v. Dep't of Labor & Indus.*, 148 Wn. App. 920, 925, 201 P.3d 407 (2009). The Board's findings of fact are conclusive if supported by substantial evidence when viewed in light of the record as a whole. *Id.* "Substantial evidence" is evidence sufficient to persuade a fair-minded person of the truth of the declared premise. *Id.* We view the evidence in the light most favorable to the prevailing party and all

7

reasonable inferences are drawn in favor of the same. *Frank Coluccio Constr. Co. v. Dep't of Labor & Indus.*, 181 Wn. App. 25, 35, 329 P.3d 91 (2014).

        1.      Finding of Fact No. 3 – Minimum Approach Distance

Potelco argues that substantial evidence does not support finding of fact No. 3—that the pole encroached within the minimum approach distance of the live 115 kV line. We disagree.

The minimum approach distance is the "closest distance an employee is permitted to approach an energized or a grounded object." WAC 296-45-035. Under WAC 296-45-325(4), "[t]he employer shall ensure that no employee approaches or takes any conductive object closer to exposed energized parts" than the minimum approach distance, unless the employee is insulated or the energized part is insulated.

Here, substantial evidence supports the Board's finding. First, evidence was presented to show that when a pole enters the minimum approach distance of an energized line, an electrical arc can be created. Hagan testified that when a conductive object enters an electrical field, it will acquire a charge if it does not have a path to be discharged to, and the charge will stay on the object until it has a place to go, which is normally the ground. Maxwell testified that when a conductive object enters the minimum approach distance, it could contact the conductor or create an arc.

Second, evidence was presented to show that the pole actually encroached the minimum approach distance of the live 115 kV line. Chase testified that when they were initially moving the pole, the cross-arm was parallel to the 115 kV line, which was not covered. When Morrison slipped, the pole tipped and rotated, and the cross-arm came around. Maxwell testified that the employees heard the arm hit the 115 kV line. Three of the employees heard an arc. Circulado

testified that he saw the pole arcing through the 115 kV line and an arc go from the arm through the butt plate. Street also saw an arc at the bottom of the pole and saw Morrison get shocked.

Viewing this evidence in the light most favorable to the Department and drawing all reasonable inferences in favor of the Department, sufficient evidence was presented to persuade a fair-minded person that the employees setting the pole allowed the pole to encroach within the minimum approach distance of the live 115 kV line, creating an arc between the 115 kV line and the pole, which travelled down the pole and shocked Morrison. *Mowat*, 148 Wn. App. at 925; *Frank*, 181 Wn. App. at 35.

Potelco argues that the employees testified that they did not see the pole enter the minimum approach distance. However, during the incident, Street only vaguely saw the top of the pole, Chase was looking at the peavey, and Circulado saw the pole arcing through the 115 kV live line and an arc go from the cross-arm through the butt plate. Also, Morrison, Street, and Chase assumed that the pole made contact with the 115 kV line. Therefore, we hold that substantial evidence was presented to support the Board's finding of fact No. 3.

2. Finding of Fact No. 6 – Protective Equipment

Potelco argues that substantial evidence does not support finding of fact No. 6—that Potelco did not ensure its employees wore appropriate protective equipment when setting the pole near a live line—because the Department failed to provide any evidence that the pole or the employees entered the minimum approach distance. We disagree.

WAC 296-45-385(1)(c) states,

When a pole is set, moved, or removed near an exposed energized overhead conductor, the employer shall ensure that each employee wears electrical protective

9

equipment or uses insulated devices when handling the pole and that no employee contacts the pole with uninsulated parts of their body.

Insulated is defined as "[s]eparated from other conducting surfaces by a dielectric (including air space) offering a high resistance to the passage of current." WAC 296-45-035. "When any object is said to be insulated, it is understood to be insulated for the conditions to which it normally is subjected." WAC 296-45-902.

Here, substantial evidence supports the Board's finding. At the hearing, substantial evidence was presented to show that the pole encroached within the minimum approach distance of the live 115 kV line and that the 115 kV line was not covered, as discussed above. *See supra*, Section A.1. Thus, substantial evidence was presented to show that the employees were working near an exposed energized overhead conductor.

Substantial evidence was also presented to show that the employees did not use protective equipment or cover rated for 115 kV when handling the transmission pole. Maxwell testified that the employees did not have protective equipment or cover rated for 115 kV. Morrison was wearing Class 2 gloves, which were not rated to address the 115 kV line, and Chase and Circulado were controlling the pole with peaveys, which were not insulated at all. Morrison confirmed in his testimony that he was pushing the pole while wearing Class 2 gloves rated for 17 kV. And Chase testified that he and Circulado were moving the pole forward with peaveys while Morrison had his hands on the pole with gloves.

Viewing this evidence in the light most favorable to the Department and drawing all reasonable inferences in favor of the Department, sufficient evidence was presented to persuade a fair-minded person that the employees setting the pole near an exposed energized overhead

conductor were not wearing sufficient electrical protective equipment or using insulated devices when handling the pole. *Mowat*, 148 Wn. App. at 925; *Frank*, 181 Wn. App. at 35.

Potelco argues that substantial evidence does not support the Board's finding of fact No. 6 because substantial evidence does not support finding that the employees entered the minimum approach distance. However, the Board's finding of fact No. 6 does not mention the minimum approach distance. The Board's particular finding only found that "employees of Potelco [set] a transmission pole near an exposed energized overhead conductor." AR at 8. Nonetheless, substantial evidence was presented to show that the pole encroached within the minimum approach distance of the live 115 kV line. *See supra*, Section A.1. Therefore, we hold that substantial evidence supported the Board's finding of fact No. 6.

B.      CONCLUSIONS OF LAW NO. 2 AND NO. 4

Potelco argues that the Board erred when it adopted conclusions of law No. 2 and No. 4. We review a Board's conclusions of law de novo to determine whether the findings of fact support the conclusions. *Mt. Baker Roofing, Inc. v. Dep't of Labor & Indus.*, 146 Wn. App. 429, 433, 191 P.3d 65 (2008). Unchallenged findings are verities on appeal. *Frank*, 181 Wn. App. at 35.

1.      Conclusion of Law No. 2 – WAC 296-45-325(4)

Potelco argues that the Board erred when it adopted conclusion of law No. 2—that Potelco committed a serious violation of WAC 296-45-325(4). We disagree.

Under WAC 296-45-325(4), "The employer shall ensure that no employee approaches or takes any conductive object closer to exposed energized parts" than the minimum approach distance, unless the employee is insulated or the energized part is insulated. The minimum

approach distance is the "closest distance an employee is permitted to approach an energized or a grounded object." WAC 296-45-035.

RCW 49.17.180(6) defines serious violation:

For the purposes of this section, a serious violation shall be deemed to exist in a workplace if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

Here, the Board's findings support the conclusion that Potelco committed a violation of WAC 296-45-325(4). The Board's finding that the pole encroached within the minimum approach distance of the live 115 kV line is supported by substantial evidence. *See supra*, Section A.1. Furthermore, Potelco does not challenge the Board's finding that the employees did not have protective equipment or cover rated for the 115 kV line as "Mr. Chase and Mr. Circulado guided the transmission pole with uninsulated peavey hooks and Mr. Morrison guided the butt end of the pole by hand, wearing only Class 2 gloves." AR at 7. Therefore, this finding is a verity on appeal. *Frank*, 181 Wn. App. at 35. Taken together, these findings support the conclusion that Potelco violated WAC 296-45-325(4) by allowing the pole to enter the minimum approach distance without employees being insulated for the live 115 kV line.

The Board's findings also support the conclusion that the violation was serious. The Board found that as a consequence of the pole entering the minimum approach distance, "Mr. Morrison received an electrical shock rendering him temporarily unconscious and causing burns to his body." AR at 7-8. The Board also found that "[a] substantial probability existed that if the Potelco employees exposed to the hazard [of electrocution] were injured, the injury would result in serious

physical harm, including death or permanent disability." AR at 8. The Board further found that the severity of the hazard from the violation "was a 6 on a scale of 1 to 6" and that the probability of an injury occurring due to the hazard from the violation "was a 5 on a scale of 1 to 6." AR at 8. These unchallenged findings are verities on appeal and support the conclusion that the violation of WAC 296-45-325(4) was a serious violation. Therefore, we hold that the Board did not err when it adopted conclusion of law No. 2.

2. Conclusion of Law No. 4 – WAC 296-45-385(1)(c)

Potelco argues that the Board erred when it adopted conclusion of law No. 4—that Potelco committed a serious violation of WAC 296-45-385(1)(c). We disagree.

WAC 296-45-385(1)(c) states,

> When a pole is set, moved, or removed near an exposed energized overhead conductor, the employer shall ensure that each employee wears electrical protective equipment or uses insulated devices when handling the pole and that no employee contacts the pole with uninsulated parts of their body.

Insulated is defined as "[s]eparated from other conducting surfaces by a dielectric (including air space) offering a high resistance to the passage of current." WAC 296-45-035. "When any object is said to be insulated, it is understood to be insulated for the conditions to which it normally is subjected." WAC 296-45-902

RCW 49.17.180(6) defines serious violation:

> For the purposes of this section, a serious violation shall be deemed to exist in a workplace if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

13

Here, the Board's findings support the conclusion that Potelco committed a violation of WAC 296-45-385(1)(c). The Board's finding that the pole encroached within the minimum approach distance of the live 115 kV line is supported by substantial evidence. *See supra*, Section A.1. Furthermore, Potelco does not challenge the Board's finding that the employees were setting a pole "under a 115 kV high voltage transmission line" and handled and contacted the pole without protective equipment or cover rated for the 115 kV line as "Mr. Chase and Mr. Circulado guided the transmission pole with uninsulated peavey hooks and Mr. Morrison guided the butt end of the pole by hand, wearing only Class 2 gloves." AR at 7. Thus, this finding is a verity on appeal. *Frank*, 181 Wn. App. at 35. Taken together, these findings support the conclusion that Potelco violated WAC 296-45-385(1)(c) by failing to ensure that its employees had protective equipment or used insulated devices when setting a pole near the live 115 kV line and allowing an employee to contact the pole with uninsulated parts of his body.

The Board's findings also support the conclusion that the violation was serious. The Board found that as a consequence of the pole entering the minimum approach distance, "Mr. Morrison received an electrical shock rendering him temporarily unconscious and causing burns to his body." AR at 7-8. The Board also found that "[a] substantial probability existed that if the Potelco employees exposed to the hazard [of electrocution] were injured, the injury would result in serious physical harm, including death or permanent disability." AR at 8. The Board further found that the severity of the hazard from the violation "was a 6 on a scale of 1 to 6" and that the probability of an injury occurring due to the hazard from the violation "was a 5 on a scale of 1 to 6." AR at 8. These unchallenged findings are verities on appeal and support the conclusion that the violation

of WAC 296-45-385(1)(c) was a serious violation.  Therefore, we hold that the Board did not err when it adopted conclusion of law No. 4.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Bjorgen, J.

_____
Melnick, J.